**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Criminal Case No.  24-cr-00113-NYW-02

UNITED STATES OF AMERICA,

      Plaintiff,

v.

2.   CARIE L. HALLFORD,

      Defendant.

---

**GOVERNMENT'S SENTENCING STATEMENT FOR
DEFENDANT CARIE L. HALLFORD**

---

      The United States of America respectfully files this Sentencing Statement for defendant Carie L. Hallford.

      The Government requests that the Court sentence the Defendant to a 180 month (15 year) term of imprisonment.  This is the maximum amount of prison time which the Government may request under the terms of the parties' plea agreement[1].  *Carie Hallford Plea Agreement*, at 3 [#136].  The Government's recommendation is consistent

---

[1]  On February 24, 2025, the Court issued a Minute Order [#79] finding that the terms of the parties' original Plea Agreement "is not in the public interest." *Order* at 1. Pursuant to the Order, the Court provided the Defendant the option to withdraw her plea of guilty or proceed forward with her plea of guilty pursuant to Rule 11(c)(1)(B), meaning the Court would no longer be bound by any sentencing recommendation of the parties. On August 4, 2025, the Defendant affirmed her desire to persist in her plea of guilty to Count 11 of the Indictment pursuant to Rule 11(c)(1)(B).  [#136].  Because the Government agreed as part of the original plea deal not to seek a sentence higher than 15 years, the Government remains committed to recommending a 15 year sentence imprisonment sentence.

with the recommendation contained within the Presentence Report ("PSR"), Exhibit A, R-1 [#71-1], which also recommends a 180 month (15 year) sentence to imprisonment.

Here, the PSR states that the advisory guideline range is 78 to 97 months imprisonment (offense level 28 and criminal history category I). *Id.* However, the matter before the Court is not an ordinary case and there are various aggravating factors warranting a significantly higher sentence than recommended by the guidelines.   By separate pleading, the Government sets forth the basis upon which it seeks a sentence above the applicable guidelines.   In order to impose a 180 month sentence, the Court would need to find that an upward variance from the guidelines is appropriate.

*Restitution and Loss Amount*

As a threshold issue, the Government requests that the Court find that the total loss amount and restitution amount imposed in Carie Hallford's case be identical to the amounts imposed by the Court at the sentencing for co-defendant Jon Hallford on June 27, 2025.   It is the Government's understanding that the Defendant does not contest the below loss and restitution figures.

Specifically, the total loss amount and restitution amount should be $1,070,413.74 which is comprised of the following:

- $193,966.18 owed to the victims[2] in the funeral home case

- $876,447.56 owed to the U.S. Small Business Administration

---

[2]   As it relates to the victims in the funeral home case, the Government has provided the Probation Department and defense counsel a detailed list of the impacted decedents, the amounts of funds which are owed per decedent, and the names of the payees.   The itemized list of funeral home victims/payees in this case is identical to the restitution victims/payees listed in the Judgment for Jon Hallford. [#121-1, Judgment Attachment A].

Further, pursuant to 18 U.S.C. § 3664(i), because all nonfederal victims must be paid before the United States is paid, the Government requests (like in Jon Hallford's case) that the victims in the funeral home be made "first priority" in connection with any restitution payments.  The Government also requests that any restitution for Carie Hallford be ordered to be paid jointly and severally with the restitution owed by co-defendant Jon Hallford.

*Sentencing Factors 18 U.S.C. § 3553(a)*

*(1) Nature and Circumstances of Offense*

The Defendant pled guilty to Count 11 of the Indictment charging her with Conspiracy to Commit Wire Fraud in violation of 18 U.S.C. § 1349.   The PSR provides a detailed and comprehensive review of the pertinent facts describing the Defendant's role and participation in the underlying offense and thus, the Government does not repeat all of the facts here[3].  PSR ¶¶ 11-71.   It is important to note that the Defendant has stipulated that the underlying facts are true and correct as set forth in her Plea Agreement and incorporated within the PSR as part of relevant conduct. PSR ¶ 10. Further, the Defendant has agreed as part of the sentencing guidelines calculations that various sentencing enhancements apply including:  a loss amount greater than $500,000 but less than $1,500,000, ten or more victims, sophisticated means,

---

[3]  The Government has contemporaneously filed a Motion Seeking an Upward Variance Pursuant to 18 U.S.C. § 3553(a).  Within such Motion, the Government discusses numerous facts and information relevant to the offense conduct.  Here, the Government incorporates by reference such pleading and any pertinent facts set forth therein.

conscious or reckless risk of death or serious bodily injury, vulnerable victim, and abuse of trust.  PSR ¶¶ 86-88, 90-91.

When evaluating the nature of the offense conduct, it is important to keep in mind the multiple ways in which the Hallford's scheme harmed others.

First, the scheme defrauded numerous victims of monetary funds.   Put simply, the Defendant knowingly failed to provide proper cremations or burial services for 190 bodies despite contractually promising the families otherwise. PSR ¶ 23.  Instead, the victims paid approximately $193,966.18 in aggregate for funeral services which the Defendants failed to ever provide.  PSR ¶ 151.   The Defendant and her husband often lied to the victims and next of kin by providing concrete mix instead of cremains. PSR ¶ 27.    In this respect, the crime was a classic "bait and switch swindle".   As a result, the Defendants' business, Return to Nature, reaped an unjust financial windfall for services which it never rendered -- all to the economic detriment of the victims.

Second, the Hallfords deceived the U.S. Small Business Administration ("SBA") out of approximately $882,300 in covid relief funds through fraudulent loan statements and certifications.  The Hallfords then misused the loan proceeds to purchase a $92,000 vehicle along with spending it on frivolous personal expenditures such as vacations, entertainment, dining, cosmetic procedures and jewelry. PSR ¶ 43.    Ultimately, the Government (i.e. – taxpayer) was deprived of these funds and it will likely never recoup such losses given the Defendant's indigency and imminent prison sentence.

Third, the Hallfords crime resulted in numerous false death certificates being filed with the State of Colorado which subsequently had to be amended.  PSR ¶ 25.  Such a process resulted an unneeded angst and anxiety for victims who were already grieving.

Similarly, third party businesses who provided cremation services for Return to Nature sometimes misidentified bodies within their own records exposing them to unnecessary liability.  PSR ¶ 26.  On at least two occasions, the wrong remains of bodies were buried by the Hallfords.  This conduct resulted in two subsequent exhumations and forced families to go through the relived trauma of reburying a loved one.  PSR ¶ 27.

Fourth, the Hallford's crime impacted others in the community by eroding the public's trust and confidence in the funeral home industry.   Although it's impossible to measure the full extent of such harm, individuals who learned of the case within the Colorado Springs area were understandably dubious of the legitimacy of funeral home businesses going forward.   As a result, the Defendant's conduct tarnished the image of other reputable businesses who honestly provide essential services in this sensitive but essential area of commerce.

Finally, in the course of swindling the victims out of their money, the Defendant also inflicted untold trauma on the families who trusted her.  In this respect, this case is far worse than a routine fraud case.  To the horror of some of the victims, they later learned from law enforcement that their loved ones' bodies had been left to decay and decompose in unimaginable circumstances at the Penrose location.   The Defendants' actions resulted in extreme emotional distress for numerous victims at a time when many were still grieving the loss of a loved one.   The Government cannot adequately capture in words the extent of the victims' pain as it is incalculable in depth and scope. Rather, the multiple victim impact statements submitted to the Court provide the best description of the damage caused by the crime along with the range of emotions felt by the victims which includes, despair, disbelief, betrayal, anger, vengeance, sadness,

frustration, and grief, etc. Regrettably for many of the victims, the wounds caused by the indignities of the offense have been so great that it has been difficult for them to move on in their lives. Some victims have described suffering physical and medical infirmities due to the offense. In addition, a number of the victims have actually received counseling and therapy in the aftermath.

In sum, the harmful toll caused by Carie Hallford's conduct has been enormous and immeasurable. The negative financial, emotional, and health consequences for the victims from the offense and others collaterally impacted must be taken into account at sentencing in order for there to be any justice in this case.

### (2) History and Characteristics of the Defendant

As it relates to the Defendant's history and characteristics, the Defendant has no criminal record. The present case represents her first felony conviction. PSR, ¶¶ 98-101. (Based on the underlying conduct, the Defendant is also awaiting sentencing in state court for multiple felony counts for abuse of corpse in violation of C.R.S. 18-13-101).

However, the Defendant's formal criminal record only tells so much. It paints an incomplete picture related to her history and characteristics.

Here, it's important to keep in mind that the Defendant's fraudulent conduct spanned four years (September 15, 2019, to October 5, 2023), and impacted the families and next of kin of 190 individuals. In the course of operating her business and carrying out the fraud scheme, the Defendant regularly interacted with the victims on multiple occasions over an extended period. To keep the horrific fraud scheme hidden, the Defendant and her husband told countless lies to the families and engaged in daily,

deliberate falsehoods.   The lies started with Return to Nature's contractual promises that the remains of the deceased would be well-cared for and properly handled in a dignified manner, and concluded with the Hallfords providing grief-stricken family members with urns full of concrete mix.   All the while, the Defendant was falsely reassuring the victims that she truly cared for their deceased loved ones.   In the midst of this conduct, the Defendant was aware of the macabre nature of the Penrose building yet she did nothing about it.  She was aware (as evidenced by text communications) that bodies were collecting, decomposition fluid was pooling on the floor, and the awful stench from rotting corpses permeated the air.  PSR ¶ 65.  To conceal the conduct, the Defendant helped her husband cover up the windows and doors of the Penrose building and caused false death certificates to be filed with the state.

The following texts communications demonstrate the Defendant's knowledge of the horrendous crime she and her husband were committing as early as June of 2020. Yet as decomposing bodies were accumulating at the Penrose location, the Defendant continued to carry out the scheme and helped conceal the crimes from others.

For example, the Defendant had the following text exchange with her husband on June 4, 2020:

> *Jon Hallford texted:*
>
> *You're frustrated !  I'm sorry, I assure you it's not for any other reason than trial and error, R and D, it's learning as I go.  I'm trying, and I'm beyond freaked out.  We're getting everything we want right now and that fucking Penrose could screw everything !  No one wants those bodies gone more than I do!  I'm sorry*
>
> *Carrie Hallford replied:*

> *Yes we are ok…I have a lot going on in my brain and I'm sorry I can't just shut it off.  I'm thinking about the house, the loan, what do we still need to get taken care of to process the loan, cremation dates, am I upsetting families because we're running so far behind, and yes Penrose….[rest of text intentionally omitted].*

(Gov't. Exhibit 1, p.1, text #1).  Approximately one year into the fraud scheme, the Defendant received a text (which was marked as "read") from Jon Hallford on October 6, 2020, which stated:

> *By December 6th we need to begin cleaning and restoring the building in Penrose to be out by Dec. 31st.*
>
> *Options*
>
> *A – Build a new machine ASAP*
>
> *B.  Dig a hole and use lye    Where ?*
>
> *C.  Dig a small hole and build a large fire    Where ?*
>
> *D.    I go to prison, which is probably what's going to happen.*

(Gov't. Exhibit 1, p.2, text #2).  Several months before the fraud was discovered by authorities in October of 2023, the Defendant communicated with her husband on August 13, 2023, as follows:

> *Jon Hallford texted:*
>
> *If Penrose were to get exposed, we both lose everything anyway.  We can't allow that to happen.  We can't allow our family to be destroyed.  I don't know that's happening with the kids but I know that I'm willing to do whatever it takes to fix it.*
>
> *Carie Hallford replied:*
>
> *There's nothing you or I can do to fix it.  We cannot be together.  We have a business to deal with and I want to help deal with it.    The kids are done.*

(Gov't. Exhibit 1, p.3, text #3).

When the Hallfords were about to receive a $350,000 covid loan payment from the SBA in April of 2021, both the Defendant and her husband were keenly aware that such funds would be useful in addressing their disaster at the Penrose facility where bodies were rotting.  The couple's text exchange on April 7, 2021, was as follows:

> *Jon Hallford texted:*
>
> *Do you understand IF we get the $350,000 it will completely get us out of debt and handle Penrose*
>
> *Carie Hallford replied:*
>
> *I know !!! Penrose !*

(Gov't. Exhibit 1, p.4, text # 4).   Despite ultimately receiving a large $350,000 loan payment from the SBA on May 24, 2021, neither of the Hallfords used the funds to properly cremate and bury the bodies at Penrose as they had promised.  Instead, they spent the funds on personal expenses, ignoring the victims' loved ones who were left to decay at their business.

In short, the Defendant's callous behavior during the four year period of the fraud scheme along with her active roll in covering it up provides the Court with ample insight into her character.

*(3) Seriousness of Offense, Promote Respect for Law, and Provide Just Punishment*

Here, the Defendant's criminal conduct warrants a substantial prison sentence to account for the seriousness of the offense, to ensure that others have a healthy respect for the law, and to provide just punishment.   The Defendant's conduct while defrauding funeral home customers was by any measure horrific and morbid.   The Defendant and

her husband took advantage of numerous victims who were at their lowest point given the recent loss of a loved one.  The fragile emotional state of many of the victims during their bereavement cannot be overstated.  While many victims were emotionally vulnerable due to their gut-wrenching grief, the Defendant played a central role in carrying out the underlying fraud.

Instead of dutifully performing cremations for the recently deceased in a dignified manner - as was her contractual and moral obligation – the Defendant abused multiple corpses.  In doing so, she violated the sacred trust that the victims and the next of kin placed in her.  The Defendant participated in the ultimate indignity by allowing 190 bodies to remain in various states of decay and decomposition at her business despite promising victims that Return to Nature would guide the families through the bereavement process in a dignified way.  As reflected in many of the victim statements to the Court, the Defendant's conduct caused untold emotional distress which will haunt many of the victims forever.  By sentencing the Defendant to a lengthy prison sentence, the Court can provide some semblance of justice albeit imperfect.  A lengthy prison sentence will signal to others that the law must be respected and that individuals like the Defendant who decide to violate society's basic norms of decency and respect for the deceased will ultimately be accountable for their actions.

The Defendant also needs punished for the over $800,000 in covid relief funds which she fraudulently obtained.  The funds were specifically earmarked for qualifying individuals who suffered from adverse business consequences during the pandemic. Sadly, the Defendant took improper advantage of the government relief plan designed to help small businesses. The relief funds -- if properly applied -- could have been used by

the Hallfords to conduct proper cremations and burials for their customers.    Instead, the Defendant and her husband lied on the initial loan application to obtain the funds and then misused the funds to support their spendthrift lifestyle, squandering the funds on jewelry, cosmetic medical procedures, cryptocurrency, entertainment and vacations.    The Defendant's flagrant abuse of such funds under the current circumstances warrants a substantial prison term.

*(4) Afford Adequate Deterrence and Protect the Public from Further Crimes*

As noted above, the Defendant's underlying fraud scheme abused the victims' trust and resulted in substantial financial losses for the victims as well as unjustified emotional trauma.  Instead of using the victims' hard-earned money for promised cremations or burials, the Defendant and Jon Hallford pocketed funds for their personal benefit while failing to provide funeral services.  The Defendants knowingly and repeatedly allowed deceased bodies to languish, unattended in deplorable conditions.   The Defendants also abused the Government's covid relief program resulting in significant losses for the SBA.

To ensure general deterrence for like-minded fraudsters in the future, the Government requests that the Court impose a substantial imprisonment sentence of 180 months.  Such a sentence will send the message to the public that similar criminal conduct will be treated seriously by the law and that participation in such a scheme will always result in meaningful prison time.  The Defendant not only committed the financial crime of wire fraud but in doing so, she gravely overstepped societal standards related to the treatment of human remains.   Others inclined to engage in this criminal conduct should be put on notice that substantial imprisonment will inevitably result should they follow in the same misguided path.

There is also a need for specific deterrence as it relates to Carie Hallford as she is 48 years old and maintains the ability to gain employment in the future.  To ensure that innocent members of the public are protected and the Defendant is prevented from returning to her deceitful business practices, the Court should impose a substantial imprisonment sentence.

### (5) Provide Defendant with Needed Educational or Vocational Training, or other Medical Care or Correctional Treatment

The PSR does not indicate that the Defendant has any particularized needs in connection with her sentence.  She appears to be in good health and physical condition; she has no apparent substance abuse issues, PSR ¶¶115, 119-120.   The Defendant has a high school degree and a bachelor of science degree from the University of Central Oklahoma. PSR ¶ 121.   She also received a certificate of medical technology post-graduate. PSR ¶ 122.   The Defendant's employment history since 2013 includes working in a lab at a hospital and working at other retail establishments.  The bulk of her employment history from 2017 to 2023 was spent working in the funeral home industry with her husband for Hallford Homes, LLC.  PSR ¶¶ 124-129.  Finally, it does not appear that the Defendant suffers from any mental health illness. PSR ¶ 116.

In sum, the PSR does not report that the Defendant has any particular educational, vocational, medical or physical conditions that require special consideration as part of her sentence.

### (6) Need for Sentence to Avoid Unwarranted Disparities Among Defendants With Similar Records Found Guilty of Similar Conduct

Conducting a meaningful disparity analysis between the Defendant and other similar defendants is of limited value given the paucity of reported cases involving

defendants engaging in similar conduct.   Here, the co-defendant received a 20 year imprisonment sentence.   The Government also conducted a canvas of the federal reporter looking for similar cases but was unable to find any congruent ones save one.

Specifically, *United States v. Megan Hess and Shirley Koch*, 106 F.4th 1011(2024) (District of Colorado), involved conduct implicating some of the same factual issues involved in the present matter.   In *Hess*, the defendants were a mother and daughter team who each pled guilty to the offense of mail fraud in connection with the operation of their family funeral home and body broker business. *Id.* at 1020-21. Among other things, Hess and Koch worked together to defraud hundreds of customers by falsely representing that they would provide a cremation or burial services for the victims' next of kin.  *Id.* at 1020.   Instead, the duo "frequently … exceeded the authority which they obtained" as it related to decedents' remains.  *Id.* at 1019.  In numerous cases, "body parts beyond those which were authorized, if not entire bodies, would be sold [by Hess and Koch] typically for purposes not even contemplated or agreed to by the victims." *Id.*  Like here[4], "families were given cremains 'that were represented as that of their loved ones when that was not true.'  Instead, those cremains were either replaced or mixed with the remains of others." *Id.*

At sentencing, Senior Judge Christine M. Arguello imposed an upward variant sentence as to each.   Hess received the statutory maximum of 240 months imprisonment while Koch received 180 months. *Id.* 1022.   The Tenth Circuit remanded

---

[4] "The Hallfords – in a number of instances – provided the decedent's family members, friends, or designated next-of-kin with an urn filled with dry concrete mix instead of the actual cremains of the deceased."  PSR ¶ 27.

the matter for resentencing as to both defendants based on various guideline issues.  At

the resentencing hearing for both defendants held on April 21, 2025, the District Court

reimposed the same sentence of 20 years imprisonment as to each defendant.  *See*

*U.S. v. Megan Hess and Shirley Koch*, Case No. 20-cr-00098-CMA (docket entries #s

428 and 431, judgments).

     Nonetheless, the Court may look to *Hess* for some limited guidance when

conducting its disparity analysis and considering whether an upward variance is

appropriate.   Like in *Hess*, the present case involves more than simply a garden-variety

fraud scheme.  Instead, the Defendants' conduct breeched all bounds of societal norms

and decency when the Hallfords chose to continuously allow 190 bodies to rot and

decay in their funeral home, contrary to the wishes of the families and terms of the

victims' funeral contracts.   Like in *Hess*, the Defendants betrayed all trust which

families placed in them to properly handle the remains of loved ones in a dignified

manner.  Instead, Carie Hallford and her husband defiled and disrespected the remains

of the loved ones, deceived the families by providing concrete mix rather than actual

cremains, and carried out their cruel conduct for a four year period.

     In short, the parallels between the two cases is noteworthy, and certainly

supports the imposition of a sentence significantly higher than recommended by the

advisory guidelines.   However, other than *Hess*, there appears to be a dearth of cases

with a similar fact pattern as the present one.   The macabre nature of the underlying

offense along with the Defendants' calculating and callous manner in which they carried

it out makes it a unique outlier, with few other cases for comparison.  Consequently, the

Government's recommended sentence would not result in a disparate outcome as there

is a lack of similarly situated defendants from which to make a meaningful comparison.
Ultimately when fashioning its sentence in the present matter, the Court will necessarily
need to consider the various aggravating factors which make the criminal conduct so
unique.

*(7) Need to Provide Restitution to Victims*

The victims are entitled to a substantial amount of restitution as part of the
sentence in this case.   As noted in the PSR, there are two victims in this case:  (1) the
victims from the funeral home fraud scheme, and (2) the U.S. Small Business
Administration.  Exhibit A, R-1.  Under federal law 18 U.S.C. § 3664(i), the individual
victims harmed by the Hallfords are entitled to priority while the SBA's right to restitution
is secondary.

As noted in the numerous victim impact statements, the families of the deceased
have suffered immeasurably as a result of the underlying offense.  Undoubtedly,
receiving any restitution payments as soon as possible would certainly be of a benefit to
such victims.  Nonetheless, the need for the victims to be recompensed must be
balanced against the other important factors set forth in § 3553(a) such as ensuring just
punishment and the protection of the public.  Unfortunately, it does not appear from the
Defendant's financial condition that she will be in a position to make any meaningful
restitution payments in the near future given that she is indigent and has virtually no
assets.  PSR, ¶¶ 131-136.

WHEREFORE, the Government requests that the Court impose an imprisonment
sentence to 180 months imprisonment.

Respectfully submitted this 23rd day of February, 2026.

15

PETER MCNEILLY
United States Attorney

By:  s/ Tim Neff
Tim Neff
Assistant United States Attorney
United States Attorney's Office
1801 California Street, Suite 1600
Denver, Colorado 80202
Telephone: (303) 454-0100
Fax: (303) 454-0405
E-mail: Tim.Neff@usdoj.gov
Attorney for the Government

By: s/ Craig G. Fansler
Craig G. Fansler
Assistant United States Attorney
United States Attorney's Office
1801 California Street, Suite 1600
Denver, Colorado 80202
Telephone: (303) 454-0100
Fax: (303) 454-0405
E-mail: Craig.Fansler2@usdoj.gov
Attorney for the Government